ADA BUNCH ET AL. *v.* M. WOLERSTEIN.

1. TAX TITLE. *Under " Abatement Act." Constitutionality of that act. Levee lands.*

The act of the legislature of 1875, known as the "Abatement Act," in so far as it provided for the abatement of taxes due the board of liquidating levee commissioners on lands then held by that board, and provided for the re-sale of such lands, was unconstitutional, as its operation would have impaired the validity of the contract between the State and the holders of liquidating levee bonds, contained in the act of the legislature approved February 13, 1867. *Gibbs et al.* v. *Green,* 54 Miss. 592, cited and approved; *Cochran* v. *Baker,* 60 Miss. 282, explained.

2. SAME. *Under Abatement Act. From levee commissioners.*

And a purchaser, under the "Abatement Act," of land then held by the board of liquidating levee commissioners has no title as against the subsequent purchaser of the title held by such commissioners.

APPEAL from the Circuit Court of Yazoo County.

HON. T. J. WHARTON, Judge.

This action of ejectment was brought by M. Wolerstein against Ada Bunch and others to recover certain lots of land in the possession of the defendants. The defendants plead "not guilty," and a trial was had upon an agreed statement of facts. The plaintiff's claim of title was based upon a deed from the sheriff and tax collector of the county, made in pursuance of a sale of the land, on the 10th of May, 1875, under the act of the legislature known as the "Abatement Act." The defendants claimed under a deed from Gwin and Hemingway, as liquidating levee commissioners and commissioners of the Chancery Court of Hinds County, under a decree rendered by that court on the 28th of September, 1877, in the case of *Green* v. *Gibbs & Hemingway*, appealed to this court and reported in 54 Miss. at page 592. The title thus conveyed to the defendants was acquired by the board of liquidating levee commissioners in 1871 at a sale for the taxes of 1870, under an act of the legislature, approved February 13, 1867.

The judgment below was in favor of the plaintiff and the defendants appealed.

*Hudson, Hudson & Holt* for the appellants.

The court will perceive that to hold a sale under the "Abatement Act" as good against the title of the levee commissioners would be to destroy what was decided in *Gibbs* v. *Green*, 54 Miss. 592—a vested right, and to deprive the holders of the new levee bonds of the very fund or property in their hands for the payment of said bonds. We think that the very question at issue was clearly and specifically decided in *Gibbs* v. *Green*. The court say that "it is manifest that the security in this case consisted of the tax * * * * and of the lands which should be forfeited to the commissioners for non-payment of the tax." "The tax and the land forfeited thereunder alike became a fund pledged by the act for the redemption of the new bonds, and it was thereafter no more competent for the legislature to repeal the tax or to divert the lands than it was for them in express terms to repudiate the bonds." It seems to us that this language is conclusive of this case.

*Henry & Campbell*, for the appellee.

The constitutionality of the Abatement Act of 1875 was fully dis-

cussed in *Cockran* v. *Baker*, 60 Miss. In that case the operation
of the Abatement Act upon lands owned and held by the *levee boards*
was *specially referred* to and used as an illustration of the general
*constitutionality* of the act. See pages 290 and 291 of above-styled
case.

Counsel for defendants contend that the Abatement Act was
declared unconstitutional in the case of *Gibbs et al.* v. *Green*, 54
Miss., but the acts of 1875 are not specially referred to in the
opinion of the court.

We contend that the conditions of the titles acquired by the
levee boards prior to the passage of the Abatement Act, their
defective character, for the same machinery was used to deprive the
original owners of their land, as in the case of tax titles on the part
of the State; the fact that the levee boards had acquired ownership
to large quantities of land that, owing to defective titles, could not
be disposed of and which were bringing in no revenue, all of which
is a matter of public history, the evils to be remedied and the end
to be attained curing the defective titles and granting new titles
deriving their efficacy from this act itself, thus offering to pur-
chasers and owners a guarantee, and by abatement of part of the
taxes an amendment to redeem or buy, and the result, to wit: the
fact that large quantities of these lands so held were redeemed, and
of those not redeemed large quantities were purchased by bidders
at the tax sales of May 10, 1875, either directly or through the
State, thus bringing in revenue and throwing the lands back into
the revenue-producing property upon which levee taxes were after-
ward collected to such an extent that the bonded debt has been en-
tirely extinguished and the liquidating levee board abolished, (see
acts 1884,)—we say all these things emphatically 'stamp the
Abatement Act of 1875 as one not in derogation of the act of
1867, but as an enabling act giving life, force, and effect to that act.

*W. P. & J. B. Harris*, on the same side.

The Abatement Act is in spirit and purpose a conservative law,
however obscurely framed, and was addressed to conditions sur-
rounding the subject-matter so embarrassing that nothing but the
hand of legislative power could extricate it. A large body of land

was held by the levee board which could neither be sold nor taxed. They were in a " dead hand." The State held a large body of land in similar fashion. Much of the difficulty of getting the land back into a taxable state arose from the doubt as to whether the State or the levee board were the owners, or whether the acquisition of such titles as they held was legally sufficient.

There was want of power in the levee board to get rid of the " body of death," and while technically the state of solvency continued, owing to the continuance of the tax, the amount of taxable land grew annually less, so that the income for the payment of the debts was insufficient to reduce it. The measure was designed to increase the taxable fund, not to divert or to diminish it. It was an effort to administer and wind up a scheme which seemed to be chronically afflicted by overwhelming infirmities in the scheme, or in its administration by bodies with inadequate powers. The very just view which the court took in regard to the act of 1866 in *Green* v. *Gibbs*, 54 Miss., can be applied to the act of 1875. The State had concluded that the best policy for it was to unfetter the land. It appeared wiser to forego the chance of collecting the back taxes, chances which had become, from years of experience, less and less hopeful, and get the lands into a taxable condition. Why a similar policy could not be adopted for the levee board it will be found impossible, we think, to establish, the object being not to diminish or divert, but to increase and vitalize the fund for the payment of the bondholders.

CAMPBELL, C. J., delivered the opinion of the court.

In *Gibbs* v. *Green*, 54 Miss. 592, it was decided that the act of 1867, then under consideration, was a contract which the State could not modify in any material matter whereby to diminish the security it provided for the holders of bonds without their consent. It was said, " the tax and the lands forfeited thereunder alike became a fund pledged by the act for the redemption of the new bonds ; and it was thereafter no more competent for the legislature to repeal the tax or divert the lands than it was for them in express terms to repudiate the bonds." The legal title vested in the levee commis-

sioners by a sale and conveyance of the land for the non-payment of taxes was transferable at their pleasure for the payment of the bonds. The "Abatement Act" of 1875 as to these lands so held was an invasion of the rights of the creditors for whom they were held, and the object of the bill in the case cited was, among other things, to have these lands subjected to sale so as to make them subservient to the rights of creditors to whom they were secured by the act of 1867, and this is the only aspect in which that bill was maintained. It was maintained for this purpose, and the lands which had been acquired by the levee commissioners under the act of 1867 were decreed to be sold. The only theory on which such decree could have been made was the invalidity of any disposition of the lands without the consent of those for whom they were a security. The invalidity of the sale by virtue of the "Abatement Act" was, therefore, affirmed by the decision in the case cited.

Upon the facts stated the appellee, who purchased under the decree mentioned, acquired title to the lands in dispute, and the proceedings under the Abatement Act conferred no title. These lands were not subject to be dealt with under its provisions.

There is nothing in *Cochran* v. *Baker*, 60 Miss. 282, conflicting with this view. The reference in the opinion in that case to the lands held by the levee boards was not as to the power of the legislature to deal with them as proposed by the act, but as evincing the intent of the legislature to proceed against the lands for the taxes of 1874, and to confer title by such proceeding independent of former assessment proceedings.

The question involved in this appeal was decided in *Gibbs* v. *Green,* cited above, and the judgment, not being in accordance with this view, is reversed, and the cause remanded for a new trial.

*Reversed.*