## J. B. SIGMAN *v.* WM. T. LUNDY ET AL.

1. CHANCERY PRACTICE. *Dismissal of bill, retaining cross-bill.*
    The dismissal by complainants of their bill does not necessarily carry with
    it the cross-bill previously filed by a defendant, but the court may, in the
    order of dismissal, retain the cross-bill, to be proceeded with by the com-
    plainant therein as an original bill.

2. TAX SALE. *Act of February* 10, 1860. *Title of purchaser.*
    Under the act, approved February 10, 1860, entitled " An act to provide for
    the better security of titles to lands held and claimed under tax sale and
    tax-titles," the provision that " no suit to set aside any title acquired under
    such sale hereafter to be made, shall be brought unless within five years
    from the date of the sale," is not a mere statute of limitation but consti-
    tutes an essential element of the purchaser's contract and a security which
    runs with the land, and which cannot be impaired by subsequent legisla-
    tion.

3. SAME. *Lapse of five years under act of* 1860. *Effect thereof.*
    The said statute had the effect to vest in the purchaser at tax sales made
    under it a title which could not, after five years, be attacked for any ir-
    regularities in the proceedings of sale. *Mayer* v. *Peebles,* 58 Miss. 628,
    *cited and explained.*

4. SECTION 8, ACT OF FEBRUARY 10, 1860. *In what cases applicable. Question*
    *of possession immaterial.*
    The clause of § 8 of said act, securing the title of the purchaser from attack
    after the lapse of five years, is applicable whether the purchaser at tax
    sale or the owner was in possession, or whether the land was occupied or
    vacant.

5. SAME. *Applicable when the state is purchaser.*
    The said provision applies also when the state is the purchaser.

6. TAX-TITLES UNDER ACT OF 1860. *Not affected by code* 1871.
    That portion of the act of 1860 which provided against the assailment of
    a purchaser's title after the lapse of five years, was substantially embodied
    in § 1709, code 1871. The adoption of said code did not affect the rights
    which had accrued to such a purchaser under the act of 1860 by virtue of
    said provision.

7. Same. *Purchase both by state and levee board.　Lapse of five years.*
　　Where land was sold under the act of 1860 to the state, although under irregular
　　proceedings, and was thereafter sold for levee taxes and bought by the board
　　of levee commissioners, the lapse of five years from the sale without any
　　suit to vacate, operated to validate the state's title, and the title of the
　　levee commissioners would be void.

8. "Abatement Act" of 1875. *Land held by the state.　Effect of payment of
　　taxes for* 1874.
　　Lands thus acquired and held by the state until March 1, 1875, became sub-
　　ject to the provisions of the "abatement act" of that date, and payment
　　under it of the state, county, and levee taxes for the year 1874, by any one
　　interested, operated to revest title in the former owner of the land.

9. Same. *Release of state's title under § 574, code* 1880; *effect thereof.*
　　Where land was sold under the abatement act of 1875 to the state, and sub-
　　sequently the owner or other interested person furnished the proof re-
　　quired by § 574, code 1880, that the taxes for 1874 were paid before the
　　sale, and obtained the auditor's release of the state's title as there provided,
　　the release not only avoids the sale under the said act of 1875, but operates
　　as a surrender to the former owner of the state's title acquired under any
　　former sale.

From the chancery court of Tunica county.

Hon. J. G. Hall, Chancellor.

The original bill in this cause was filed in 1879 by J. B. Sigman, appellant, against Tamlin Avent, and all other persons claiming any interest in the lands in question, and sought to confirm the tax-title of appellant to the same.　Publication was made as required in such cases by the statute.　At the March term, 1880, the bill was dismissed as to Tamlin Avent, his death being suggested, and *pro confesso* decree taken against all claimants of the land, except the appellees, Wm. I. and Betty W. Lundy, who were minors, and who had appeared and answered by their guardian *ad litem.*

These defendants subsequently, by leave of court, amended their answer, and made it a cross-bill.　The cross-bill alleged that the complainants therein were heirs of Tamlin Avent, the owner of the lands, and that the tax-titles under which appellant claimed were clouds upon their title, and prayed for a cancellation thereof.

The original bill was dismissed by the complainant in vacation,

and at the ensuing term, in October, 1880, the court made an order approving the dismissal, but, upon application of complainants in the cross-bill, recited in the order that the cross-bill was retained to be proceeded with as an original bill. Appellant appeared as a defendant to the cross-bill, and the trial was subsequently had upon the issues made under the cross-bill and an amended or supplemental cross-bill in which four other heirs of Tamlin Avent were joined as complainants.

The titles of both the appellant and appellees are sufficiently shown in the opinion. The chancellor decreed in favor of the complainants in the cross-bill, and cancelled as void the tax-titles relied on by the defendant, the complainant in the original bill, who prosecutes this appeal.

It will be noted that the suit was proceeded with upon the cross-bill, as an original bill, and the appellees, the parties defendant, who exhibited the cross-bill, are designated as complainants throughout the opinion.

*Calvin Perkins*, for appellant.

1. The dismissal of the original bill should have carried with it the cross-bill. *Ladner* v. *Ogden*, 31 Miss. 332 ; *Thomason* v. *Neeley*, 50 Ib. 310 ; *Jacks* v. *Bridewell*, 51 Ib. 881 ; *Belcher* v. *Wilkerson*, 54 Ib. 677. No difference can be discovered between this case and the case of *Belcher* v. *Wilkerson, supra*. In both cases the original bills were filed to confirm tax-titles, and in both the cross-bill set up a legal title and the invalidity of the tax-title. The test is, not whether the matter set up in the cross-bill might be the subject-matter of an original bill, but whether it is wholly independent of the subject-matter of the dismissed bill, as was the case in *Dewees* v. *Dewees*, 55 Miss. 318. In this case the cross-complainants have a perfect legal title, or none, and no right to file an original bill but for the alleged invalidity of appellant's tax-title. In the language of *Ladner* v. *Ogden*, the relief sought was not "separate and independent of the original bill ;" indeed it could have no standing in a court of equity, but for the claim of Mrs. Sigman that she had a valid tax-title to the land.

The cross-bill was not treated by the parties as an independent

or original bill. Process was served on the solicitors in the original
bill, and the orders taken thereon merely recite notice served on
the solicitors.

2. It was even more erroneous, after retaining the cross-bill, to
permit four other parties to join as co-complainants therein. The
motion to strike out this amended cross-bill should have been
sustained.

(3. Counsel reviewed in the light of the authorities the alleged
irregularities in the sale of 1869, by the tax collector to the levee
commissioner, but the view taken by the court renders it unneces-
sary to follow this argument.)

4. It cannot be said that the sale to the state in 1867, and the
subsequent sale to the state under the abatement act of 1875, show
that the land was not liable to taxation for levee purposes in 1869,
and hence no title passed by the sale in 1869 to the levee commis-
sioners. The releases executed by the auditor in 1883 to Mrs.
Sigman are evidence of the fact that the taxes for 1874 were all
paid before the sale of 1875, and that the title acquired by the
state was void. Surely then the mere claim of the state under a
void sale, since recognized as such by her authorized officer, and by
him cancelled in accordance with his statutory power, will form no
ground for invalidating the levee sale of 1869. The release relates
back to the foundation of the state's claim of the land, and wipes
it out as though it never had been. Was it proper in 1886 to
invalidate and set aside the levee sale in 1869, because of a void
sale to the state, which the state had already released?

*Chalmers & Cooper,* on same side.

*Dabney M. Scales,* and *A. S. Buchanan,* for appellees.

1. The cross-bill was properly retained after the dismissal of the
original bill. *Belcher* v. *Wilkerson,* 54 Miss. 677 ; *Dewees* v. *De-
wees,* 55 Miss. 315. In the latter case it is distinctly announced
as the true rule that the dismissal of the original bill will not nec-
essarily carry with it the cross-bill, where the cross-bill is filed for
relief separate and independent of the original bill, though touch-
ing the same property or growing out of the same subject-matter
involved in the original bill. *Ladner* v. *Ogden,* 31 Miss. 332 ;

*Wickliffe* v. *Clay*, 1 Dana 585. In this case the relief sought by the cross-bill is a distinct and separate ground of equity juris-diction. The cross-bill contains more than mere matter of de-fense, viz.: the cancellation of certain deeds as clouds upon the title of the complainants therein. Though touching the same property, and growing out of the same subject-matter, yet inde-pendently, the grounds of relief sought by the cross-bill would sustain an original bill.

2. There was no error in the court's allowing the cross-bill of Wm. T. and Betty Lundy to be amended so as to bring in as co-complainants the other four heirs of Tamlin Avent. The cross-bill had been retained as an original bill. The original bill made all parties in interest defendants by publication and not by name. It developed that these parties had rights in the land and it was not only proper but necessary to join them as parties. But if there were error as to this, it could not harm the appellant, and this court will not reverse. *Summers* v. *Brady*, 56 Miss. 10, 18; *Germania Ins. Co.* v. *Francis*, 52 Ib. 457.

(3. Counsel argued at length the invalidity of appellant's title derived from a sale in 1869 for the taxes due the levee board, con-tending that the proceedings of the said tax sale were fatally de-fective.)

4. The antecedent sale to the state in 1867, followed by a sale to the state in 1875 under the abatement act, shows that the land was not liable to taxation for levee purposes in 1869, and hence no title passed by the sale in that year.

5. There was no title, outstanding in the state, when the bill was filed and the decree entered. The title acquired by the state by the sale in 1867 was void. The land was not held by the state for any valid taxes in 1875, when it was sold again; and, besides this, whatever claim the state had gained to the land it parted with by the release executed by the auditor to J. B. Sigman.

COOPER, J., delivered the opinion of the court.

The chancellor did not err in retaining the cross-bill and permit-ting complainants therein to proceed with it as an original bill. In

*Belcher* v. *Wilkerson*, 54 Miss. 677, there was no order of court retaining the cross-bill, while in the case now before us the order of the chancellor expressly retained the cross-bill "as an original bill," and directed process to be issued on it as such. The appellant entered her appearance and answered, thus waiving the process directed to be issued.

Proceeding to the main questions involved, it is sufficient to say in reference to complainants' title that as heirs at law of Tamlin Avent they are the owners of the lands in controversy (Sec. 18, T. 17), unless the tax-title under which appellant claims is valid, or unless a valid outstanding tax-title is shown. The history of the tax-titles adverse to the ownership of complainants is this:

The lands were sold to the state in 1867 for the taxes of 1866; in 1869 they were sold for levee taxes and bought in by the board of levee commissioners; in 1875 they were sold by the state under the act of March 1, 1875 (commonly known as the Abatement Act), and again bought by the state; in 1878 they were sold by Gwin and Hemingway, commissioners of the chancery court of Hinds county in the case of *Green* v. *Gibbs*, and the title thus conveyed is now vested in appellant.

Appellant first acquired a claim to the lands in November, 1878, and in 1883 she procured from the auditor of public accounts a release from the state's title to all the lands except the N. E. ¼ of S. W. ¼ and the N. W. ¼ of S. E. ¼, by compliance with § 574 of the code of 1880, which is as follows: " When the owner or any person interested in any lands held by the state by a purchase at a sale for taxes shall produce a tax receipt for the payment, to the collector, of the taxes for which said land was sold, before such sale, and shall pay to the collector of taxes of the county in which said land is, all taxes which have subsequently accrued on said land and not been paid, taking his receipt therefor in duplicate, which such collector is hereby required to furnish him, and shall file with the clerk of the board of supervisors of such county one of said receipts, and with the auditor of public accounts the other of such receipts, and also the receipt first mentioned, the said auditor shall release to such person the title of the state to such land,

which release may be recorded without acknowledgment, as in other cases of conveyances by the auditor."

Complainants attack the sale of 1867 on the ground that it was not made at the door of the court house, and because the land was not offered in the smallest legal subdivisions, but was sold as one entire tract. This, it is said, rendered the title thus acquired void as to the owner, but that it was effectual to prevent a subsequent sale for levee taxes, since thereafter the lands were " held by the state," and exempt from such taxes.

The conclusion sought to be reached by complainants by this process of reasoning, is arrived at by us on different reasons ; its effect is, of course, the same. The conclusion is reached by us, not upon the ground that both tax-titles were void, but because one (that held by the state) was valid, wherefore the other (that acquired by the levee board) was invalid. We shall see by what course of action the valid tax-title derived under the sale of 1867 was afterward surrendered and became inoperative.

By an act entitled " An act to provide for the better security of titles to lands held and claimed under tax sale and tax-titles," approved February 10, 1860, it was among other things declared, " That all sales of lands hereafter made for non-payment of taxes, due under any law of this state, shall be valid to all intents and purposes—said lands subject to redemption as provided by law— and that no such sale shall be impeached or questioned in any manner, or for any cause, saving fraud or mistake in the assessment or sale of the same, or upon the proof that the tax for which the same were sold had been paid prior to such sale, and *no suit to set aside any title acquired under such sale, hereafter to be made, shall be brought, unless within five years from the date of the sale.*" Acts 1859–60, p. 213, § 8.

The first question for consideration is whether under the operation of this statute, the title derived by the state under the sale of 1867 became secure from attack by the lapse of time, or whether the italicized part of the act was a mere statute of limitation which was repealed by the adoption of the code of 1871 before the period had expired.

In *Nevin* v. *Bailey*, 62 Miss. 433, we construed a provision of the code of 1871, similar in purport to the above, and declared its effect. That provision was, as is this, in form a statute of limitations, but in substance it was held to be in many respects much more than such a statute. The title, scope and purpose of the act of 1860 (the italicized portion of which was carried forward and became a part of § 1709 of the code of 1871) adds strength to the conclusion reached in the case above cited. The act was to provide " for the better security of tax-titles ;" it afforded a remedy by which the holder under tax-title might call into court all persons " claiming or having any interest in such lands, which existed at the time the same were sold for taxes " and settle once for always the validity of his title. As to the sales thereafter to be made, it added the assurance that after the lapse of five years no hostile claim should be asserted. Whether the purchaser at tax sale or the former owner was in possession of the land sold ; whether the land was occupied or vacant, the security afforded by the act existed. The provision as to future sales was intended to be, and was, an irrevocable and irrepealable stipulation that after the lapse of time named no assailment of the title should be made. It was, and was intended to be, a part of the contract into which the purchaser would enter, an inherent, continuing element of right secured, running with the land and a perpetual security of the title. But it was aimed at those who were delinquents, and was, as we have recently held, ineffectual as against him whose taxes had been paid. *Metcalfe* v. *Perry, ante,* p. 68. It probably would be equally inapplicable to a case in which compliance with constitutional requirements as to assessment was not shown. As to lands bought by the state, the power of course existed to repeal the law, since such repeal would not be the impairment of the contract of sale.

If this statute had been a pure statute of limitations, the next inquiry presented might be differently answered. That inquiry is, whether it was repealed by the code of 1871 in which the subject of limitations of actions was revised and codified ?

The substance of the first six sections of the act of 1860 is embodied in § 1753 of the code, and that portion of § 8 of said act now

under consideration became a part of § 1709.  The argument has been made that § 1709 of the code refers to sales thereafter to be made under the provisions of the chapter of which it is a part, and that as to sales made under the act of 1860 neither the code nor the act applies ; the code because it was prospective in its operation, and the act because it has been repealed.  But, as we have said, the act confers a right upon the purchaser at tax sales ; it is not expressly repealed, and by § 13 of the code it is declared that, even where there is a repeal by the code of former laws, it " shall not affect any act done, or any cause of action, or any right accruing or accrued * * * previous to the time when such repeal shall take place."

While therefore the former owners of the land might have attacked the title secured by the state under the sale of 1867, within five years from the date of such sale, the lapse of that period of time made such title valid against attack based upon any mere irregularity in the proceedings of sale.  In *Mayer* v. *Peebles*, 58 Miss. 628, our attention was not called to the act now under consideration, and the validity of the title of the levee board springing from the lapse of time was not considered.  A different conclusion would probably have been reached if the statute now under review had been appealed to.  Whether the state's title was unimpeachable at the time of the sale to the levee board is immaterial, since it afterward became so prior to the enactment of the act of March 1, 1875.  By that act, the state in effect declared that it would abandon all claim under pre-existing tax sales, whether made to itself or to one of the levee boards, on condition that the owners of the land, or others interested in the forfeited land, would pay the state, county and levee taxes for the year 1874, and, in default of such payment, a scheme was provided for a re-sale of all the delinquent lands.  In *Green* v. *Gibbs*, 54 Miss. 592, and *Bunch* v. *Wollerstein*, 62 Miss. 56, it is decided that this act, in so far as it endeavored to abate the taxes due to the levee board on land held by it, was unconstitutional as impairing the rights of the creditors of such board.  But this was upon the ground that the levee board was the owner of the lands as trustee for such creditors.  In the

case before us the state and not the levee board was then the owner of the lands now in controversy, and, because it was, might abate as it saw fit all delinquent taxes.

We can perceive no ground for holding invalid the sale to the state under the abatement act other than that disclosed by the releases executed to appellant by the auditor, and they cover only a portion of the lands. It appears from these releases that appellant in 1883 exhibited to the auditor of public accounts the evidence required by § 574 of the code that the taxes for which the lands were sold had been paid before the day.of sale. But in 1883 when these releases were made the state had abandoned her claim derived from the sale of 1867, and claimed a new and independent title under the act of March 1, 1875. *Cochran* v. *Baker*, 60 Miss. 282.

The releases are evidence of the fact that the taxes for the year 1874 had been paid before the sale under that act, for it was the duty of the auditor to receive evidence of that fact. But he had no right to require evidence of the payment of the taxes for the year 1866, since they had been abated and released by the act of 1875. Payment of these taxes proven to have been made, operated not.only to prevent a sale of the lands for such taxes but also to release to the former owner the title acquired under the sale of 1867.

Section 574 of the code speaks of a " release " of the state's title in the state of case therein named, but the evidence required under that section, is that the taxes had been paid before the sale, in which case the state would have no title to pass by the release, and no title could, of course, pass thereby. It is probable that appellant intended to concentrate in herself both the title of the levee board and that derived by the state under the sale of 1875, but the evidence she exhibited to the auditor proved that the state acquired no title by that sale because the taxes had been paid, and, as we have seen, the levee board acquired none by its proceeding, because the state then had title to the land. The sole valid tax-title to the lands described in these releases, on the facts shown, was that derived by the state in 1867, and that it surrendered in

consideration of the payment of the taxes of 1874. But as to eighty acres of the land not named in the releases, it does not appear that the state has released its title acquired by the sale under the act of March 1, 1875; there is no evidence that the taxes on these lands had been paid and there is no other defect suggested as to that sale.

*For the error in affording complainants relief as to this land, the decree is reversed and cause remanded.*