## A. J. PAXTON *v.* VALLEY LAND CO.

1. TAX-TITLE.  *Release of state's title.  Acts of 1884 and 1888.  Gibbs v. Green.*
    Where land was sold in 1867 to the state for taxes, and again in 1870 to the levee board, and afterwards, under the decree of the chancery court of Hinds county, in *Gibbs* v. *Green,* purchased by one who procured releases of the state's title under the acts of March 4, 1884 (Laws, p. 182), and March 2, 1888 (Laws, p. 41), the validity of the title so acquired is not affected by the question whether the title was in the levee board or the state, since if either had title he acquired it.

2. SAME.  *Abatement act of 1875.  Effect on land neglected to be sold.*
    The mere enactment of the statute of March 1, 1875, known as the abatement act, did not divest the title of the state or levee board, or revest title in a delinquent owner of lands embraced by it.  No benefits coul accrue to him under it except by compliance with its terms, and land subject to be sold under it, but not sold, continued to be held as before, unaffected by the act.

3. ADVERSE POSSESSION.  *Statute of limitations.  When begins to run.  Possession.*
    One who relies on the ten-years statute of limitations to bar an entry or action to recover land, must show possession in himself, or those through whom he claims, for the statutory period.  Title unaccompanied by possession cannot set in motion the statute.

4. ACT OF MARCH, 1884.  *Release of state's title.  Taxes of 1881.*
    Under the aforesaid act of 1884 (Laws, p. 182), requiring the auditor, before executing the release therein provided, to collect the taxes due subsequent to the sale under the decree in *Gibbs* v. *Green,* he was not required to collect taxes for 1881, since the sale was not made until October 3, 1881, and was not confirmed until April following.

5. CODE 1880, § 562.  *Indorsements on state deeds.  Acts of 1884 and 1888.*
    Section 562, code 1880, requiring the auditor to indorse on tax-deeds made by him the amount of all taxes and damages, fees and commissions, etc., has no application to the deeds of release required by the aforesaid acts of March 14, 1884, and of March 2, 1888.

FROM the chancery court of Sunflower county.

HON. W. R. TRIGG, Chancellor.

The appellee, the Valley Land Co., Limited, filed the bill in this cause, alleging that it was the true owner of the land in controversy, and praying for a cancellation of the claim asserted thereto by the appellant. A demurrer was interposed by the defendant, which was overruled, and an appeal taken to the supreme court, which affirmed the decree. For the allegations of the bill and the several points presented by the demurrer and the rulings of the court thereon, see the very full report of the case on the former appeal, *Paxton* v. *Valley Land Co.*, 67 Miss. 96.

After the cause was remanded the defendant answered, denying complainant's title, and alleging that he was the original and true owner, and asserting the invalidity of the several tax-titles and releases from the state which are relied on by complainant. The history of the title, both that relied on by complainant and defendant, is given in the opinion.

Apart from the many objections urged to the several tax sales to the state and to the levee board, and which defendant alleges render complainant's title based on them invalid, it is contended that this suit by complainant is barred by the general ten-years statute of limitations, which finds a place in each of the codes of 1857, 1871, and 1880, and which provides that "no person shall make an entry or commence an action to recover any land but within ten years next after the time at which the right to make such entry or to bring such action shall have first accrued to some person through whom he claims," etc.

It is also contended by defendant that the tax-titles asserted by complainant, and which are averred to be defective, are not aided or cured by the releases executed to complainant's remote vendor by the auditor under the act of 1884, because by that act the auditor was required, as a prerequisite to such release, to collect all taxes due subsequent to the sale under the decree in *Gibbs* v. *Green*. The sale under the decree in that case was made October 3, 1881, and confirmed in April following.

It is insisted by appellant that as taxes for 1881 were not col-

lectible until after the sale was made, it was the duty of the auditor, before making the release, to collect taxes for 1881, which it is admitted he failed to collect.

It is also objected to the quit-claim deeds executed by the auditor under the acts of 1884 and 1888, that he failed to comply with § 562, code 1880, which requires him to make a statement on each conveyance made by him of delinquent lands, of the amount of state and county taxes and damages, and also fees and commissions, etc., and provides that such conveyance shall not be valid unless it has been dealt with as herein required.

The court rendered a decree in favor of complainant, and defendant appealed.

*Chapman & Paxton*, for appellant.

It is immaterial whether the sale to the state in 1867 was valid or not, since it afterwards became so through the operation of the statute of limitations of five years. *Sigman* v. *Lundy*, 66 Miss. 522.

Appellee claims to have acquired this title by its purchase in 1884 and 1888. If the state held the title from 1867 to 1884, then the land was not liable to sale in 1870 for levee taxes. *Sigman* v. *Lundy, supra*. This of itself disposes of the title derived from the levee board in 1870.

The land was not sold under the abatement act; hence it must be assumed that the taxes were paid and the title released; but if not sold the effect must be the same. Under said act, in default of the payment of taxes of 1874, the land was to be resold for the purpose of revesting in the state the divested title. No sale occurred, and the state did not again acquire title. If the state already had title, no sale was necessary upon default. If a further test is necessary, it is found in the fact that a defaulting tax-payer in 1876, in order to redeem from the sale under the abatement act, was only required to pay the taxes for which the land was sold and subsequent taxes, damages, etc. This statute should be given the same effect as is given to the five-years statute of 1860, or the three-years statute in reference to tax-titles as found in the code. The two former apply to tax-titles, the latter applies to all titles.

The deeds executed by the auditor under the acts of 1884 and 1888 were void, because of the failure by the auditor to make on them the indorsements required by § 562, code 1880.

If there was a title in the state under the sale in 1883, appellant is entitled to it by virtue of his tender to the auditor in February, 1888, of all taxes due, and his mandamus filed immediately thereafter, and which is still pending. Complainant cannot claim anything under the act of 1888, because that act was passed after the beginning of the mandamus suit.

*Calhoon & Green,* on the same side.

The last levee sale is invalid under *Sigman* v. *Lundy,* and the title of complainant must stand on the sale in 1867 to the state. But this title, while in the state, was lost by the enactment of the abatement act of 1875, which released all former claim of title by the state, and treated the land as revested in the delinquent owner, and proceeded anew to subject it to sale as his property for the taxes of 1874. *Cochran* v. *Baker,* 60 Miss. 282; 61 Ib. 459.

In *Sigman* v. *Lundy,* the court says: "But in 1883, when these releases (under the act of 1884) were made, the state had abandoned her claim derived from the sale in 1867, and claimed an independent title under the act of 1875." The act of 1875 abated the title of the state, and virtually directed a new assessment and required a new sale upon default. The declaration in the act is one of absolute release, with no conditions attached, and nothing to be done by the owner. The failure to sell the land did not in any manner affect the previous release of title. That the land was not sold under the abatement act raises the presumption that the taxes had been paid, and the burden of showing the contrary rests on appellee.

The release executed by the auditor under the act of 1884 conferred no rights, because of his failure to collect the taxes for 1881. He was required to collect all taxes since the purchase of the levee commissioners under the decree in *Gibbs* v. *Green,* 54 Miss. 592; *Murdock* v. *Chaffe,* 67 Ib. 740.

The land was sold under the decree of October 3, 1881. It was

therefore liable for taxes in 1881. *Richardson* v. *Grayson,* 65 Miss. 322.

We submit also that the releases from the auditor are void under § 562 of the code.

*Nugent & McWillie,* for appellee.

The auditor was not authorized by the act of 1884 to collect taxes for 1881 before executing the releases therein provided. The lands could not be taxed while the title remained in the levee commissioners, and as the taxes are payable October 1, and the sale did not occur until October 3, and was not confirmed until April following, no taxes were due and collectible for 1881.

The deed to the state in 1876 was made unassailable after five years by the act of 1860, as decided in *Sigman* v. *Lundy ;* also by § 1709, code 1871, the three-years statute of limitations. *Nevin* v. *Bailey,* 62 Miss. 436 ; *Gibson* v. *Berry,* 66 Ib. 515.

Appellant can claim no benefit by the abatement act of 1875. He failed to comply with its terms, and cannot claim that taxes prior to 1874 were released. Having refused to regain his land, even at the small expense necessary to relieve it from forfeiture, he cannot assert any claim under the act. Besides, the land was not subject to sale under the abatement act. See *Gibbs* v. *Green,* 54 Miss. 592 ; *Cochran* v. *Baker, supra ; Bunch* v. *Wolverstein,* 62 Ib. 56.

The statute of limitations of ten years was never set in motion in favor of appellant. It is idle to talk of the right of the holder of a tax-title being barred by mere efflux of time alone, uncoupled with actual adverse possession in another. It is not contended that appellant ever had actual possession.

*Frank Johnston,* on the same side.

No taxes have been paid on the land in controversy by appellant for nearly twenty-five years. It was sold for taxes in 1867, in 1871, and again in 1883. If any of these titles are valid, the decree of the chancery court must be affirmed. No objection is urged to the sale to the state in 1867. Its force is sought to be avoided upon the

strange theory that the abatement act released *proprio vigore* the title of the state and vested it again in the delinquent owner.

If we could conceive that the abatement act had this effect, complainant still has the title which the state acquired at the tax sale of 1883, and which went to the appellee by the state's deeds of 1884 and 1888. If, as contended, enough taxes were not paid to the auditor under the act of 1884, the supplemental act of 1888 validated the release under the former act. But no taxes for 1881 were due. If the tax accrued at the time it was levied, then the lands were exempt because the title was in the levee commissioners. If it accrued when it was payable, the purchasers were not liable, because the sale had not then been confirmed.

The ten-years statute is not applicable, because it requires actual adverse occupation to set that statute in motion.

Section 562, code 1880, applies only to conveyances required by the general revenue laws. It has no application to the quit-claim deeds required by the acts of 1884 and 1888.

Argued orally by *M. Green* and *A. G. Paxton*, for appellant, and *T. A. McWillie* and *Frank Johnston*, for appellee.

CAMPBELL, J., delivered the opinion of the court.

Sections 5 and 6, the subject of this suit, were acquired in fee-simple by the appellant in 1846, and belong to him now, if his title has not been divested. The lands were in their natural state, undisturbed by man, without any sort of occupancy until 1888. Because of their liability to inundation from the Mississippi river annually, they were esteemed of little value, comparatively, and unsuited to cultivation until the past few years, during which the levees have given promise of protection; and because of this they were not settled upon; and during all these years the taxes on them were not paid. In the early part of the year 1888, the appellant made an actual entry upon the land, and commenced to improve it, by clearing and building, and about that time A. G. Paxton, son of the appellant, applied to the auditor of public accounts to purchase or redeem the land, offering to pay any dues, in order to effect this; and he was informed that the state did not claim the land, and

thereupon he petitioned for a *mandamus* to compel a conveyance by the auditor, which proceeding having begun is still pending, not having been actively prosecuted. Because of the non-payment of taxes, in 1859, section five was sold for taxes, and conveyed to Whitehead; and, in 1860, part of section six was sold and conveyed to the treasurer of the levee board, and on July 1, 1867, both sections were sold for taxes, and conveyed to the state of Mississippi; and on May 11, 1870, both sections were sold for taxes, and conveyed to the levee board; and October 3, 1881, they were sold and conveyed by the commissioners invested with the title of the levee board, and acting in accordance with a decree of the chancery court of Hinds county, in the case of *Joshua Green and others against Hemingway and Gibbs*, to E. C. Gordon, who conveyed them to Evers, who conveyed to Burroughs, who conveyed to Prentiss, who conveyed to Mrs. Prentiss, who conveyed to the appellee. In March, 1883, these lands were sold for taxes, delinquent for 1882, and conveyed to the state of Mississippi; and, in May, 1884, the auditor of public accounts executed a quit-claim of the title of the state to these sections of land to Evers, in pursuance of an act of the legislature of Mississippi entitled, " An act for the benefit of purchasers of levee lands," etc., approved March 14, 1884, acts, p. 182 ; and, in August, 1888, the auditor, acting in obedience to an act entitled, " An act to quiet and settle the title to certain lands," etc., approved March 2, 1888, acts, p. 40, executed a deed conveying to George Prentiss (named above) the state's title to the above described lands. On March 1, 1875, was approved an act, familiar to the bench and bar of this state, by the name of the " Abatement Act," acts of 1875, p. 11. The two sections involved in this suit being held by the state for taxes by its purchase July 1, 1867, were subject to the provisions of that act, and liable to be sold under it, but were not sold.

The appellee (complainant in the suit) has vested in it whatever title the commissioners of the levee board or the state of Mississippi could convey by their several conveyances ; and the important question is whether either had a title to transmit? The tax-deeds of 1859 and 1860 may be dismissed from consideration. If those

sales were void, as claimed by Paxton, as probably they were, that disposes of them, but, if valid, the subsequent sale to the state, July 1, 1867, renders their further consideration unnecessary. The title acquired by the state by the sale July 1, 1867, was perfected by the lapse of five years from the date of the sale, by virtue of the act entitled, "An act to provide for the better security of titles to lands held and claimed under tax sale and tax-titles," approved February 10, 1860. Acts 1859-60, p. 213, § 8; *Sigman* v. *Lundy*, 66 Miss. 522. The sale for taxes in 1870 to the levee board need not be further considered. If void, as affirmed by the appellant, that disposes of it; and if valid or, if the perfecting effect of five years after the sale, by virtue of the act of February 10, 1860, be ascribed to it or, if the completion of the five years, whereby the state's title acquired July 1, 1867 was rendered unassailable, operated as a merger of the claim of the levee board by its purchase May 11, 1870, the result is the same. If the levee board had title, or if the state had, the appellee acquired it.

The abatement act did not, by its mere approval, divest the title of the state or levee board. It does not release title. It abates or remits all taxes for years prior to 1874, and where land was dealt with and disposed of under it, any former title of the state or levee board was gone, but if from any cause land held and subject to disposition under this act was not disposed of, it was unaffected, and continued to be held as before. The purpose of the act was to induce delinquent owners to pay one year's taxes as the price of relinquishment of all claim on the land for the past, failing in which the land was to be sold as prescribed, but the state did not, by this act of grace, renounce its title or reinvest the delinquent owner with it. It sought to induce him, by liberal terms, to come forward and pay the small part due for years of delinquency, and declared a purpose to sell the land and acquire a new title, if he did not pay, as proposed, but he could not claim anything, by virtue of the act, except by compliance with its terms.

The title of sections five and six was not affected by the abatement act, and remained as before. The liquidating levee commissioners, exercising their power under the law, and with the sanction

of the· chancery court, which had intervened, in the interest of creditors in *Gibbs* v. *Green*, 54 Miss. 592, sold and conveyed the two sections on October 3, 1881, to Gordon, as stated above, and he conveyed to Evers, who failed to pay taxes for 1882, and the lands were sold to the state for this delinquency March 5, 1883, and were afterwards, in 1884 and in 1888, severally conveyed by the state, through its auditor of public accounts, for the purpose plainly declared by the acts authorizing the conveyances, of perfecting the title acquired by the conveyance of the levee commissioners. The tax sale of March 5, 1883, was void according to the averment of the appellant, and the purchase by Evers, and the conveyance to him by the auditor, the appellant claims, was a *redemption* of the land. Accepting these views, it follows that the tax sale of 1883 may be put entirely out of view, and that by the combined operation of the conveyances of the levee commissioners and the auditor of public accounts, the appellee got a perfect title to these lands, which were lost to their former owner, the appellant, by his delinquency in not paying the taxes on them.

The defense of the statute of limitations of ten years, invoked by the appellant, is effectually disposed of by the fact that until 1888 he had no such possession of the land or any part of it as to set the statute in motion. *Tush-Ho-Yo-Tubby* v. *Barr*, 41 Miss. 52.

The conveyance by the auditor, under the act of 1884, was not invalid for failure to collect taxes for 1881 on the land, for none were due; and § 562 of the code of 1880 has no application to the deeds by the auditor under the acts of 1884 and 1888. It applies to conveyances contemplated by § 561.

We fail to discover how the several decisions of this court, set forth in the answer of the appellant to the bill, can avail anything in his behalf in this case. It is his misfortune not to have anticipated the announcement in *Sigman* v. *Lundy*, plainly foreshadowed by earlier decisions, in time to have prevented the bar of five years, by paying what was required to clear his title, but this court was not precluded from applying a statute designed for the purpose to the cure of irregularities in a tax sale, because of the fatal effects on delinquent land owners, who for years experimented as to the value

of tax sales. *Sigman* v. *Lundy* is new in the instance merely, not in principle. It did not overrule any former decision or announce any new principle or contravene any judicial utterance. It for the first time declared the effect of the act of February 10, 1860, and applied it, because never before had the court been called on to do so.

We regret that during the many years elapsed, and the many opportunities afforded, the owner did not free his lands from all claim, except his own, but the title, lost by delinquency and neglect, has been securely vested in another, and it must be upheld.

*Affirmed.*