MARGARET T. CALLAHAN *vs.* MERCANTILE TRUST
COMPANY & others.

JAMES J. LOGAN *vs.* MARGARET T. CALLAHAN.

Suffolk.    November 28, 1904. — June 21, 1905.

Present: KNOWLTON, C. J., MORTON, BARKER, HAMMOND, & LORING, JJ.

*Equity Jurisdiction.    Equity Pleading and Practice.*

A woman who executes and acknowledges a discharge of an old mortgage and an
assignment of a new one, representing the investment of all her savings, because
she has implicit confidence in her legal adviser and without reading the instru-
ments or understanding their purport, and entrusts all the papers including the
mortgage note indorsed in blank to the possession of her legal adviser, if her
legal adviser sells the mortgage and absconds with the proceeds, has no remedy
in equity against the persons who have purchased the mortgage from him in
good faith or against a trust company to which the mortgage has been assigned
as security for an advance of the purchase money.

Where a defendant in equity files a cross bill stating a case entitling him to affirm-
ative relief and the original bill is dismissed, the cross bill may be retained for
the purpose of granting relief as if it were an original bill.

BILL IN EQUITY, filed January 17, 1903, by Margaret T. Cal-
lahan against the Mercantile Trust Company and James J.
Logan, and Simon Bilosky and Lewis P. Kaufman, the two
last named defendants being added by an amendment allowed
by the court on May 26, 1903, and a CROSS BILL, filed March 20,
1903, by the defendant Logan against the plaintiff in the first
bill.

By the first bill the plaintiff sought to establish her title to a
$5,000 mortgage upon land of the defendant Logan, the plain-
tiff in the cross bill, of which the Mercantile Trust Company,
another defendant, held the record title by an assignment from
Margaret T. Callahan, under which, as between the trust com-
pany and Kaufman and Bilosky, the other defendants, the mort-
gage was the property of those defendants, and was held by the
company only as collateral security for a debt of $4,000 due to
it from them.

The case was sent to a master, who made a report stating the
facts, and came on to be heard before *Loring,* J., who by agree-
ment of counsel reserved the case for determination by the full

court upon the pleadings and the report of the master, such decree to be filed as equity might require.

From the report it appeared that in April, 1901, Logan, owning certain land upon which he was erecting a house, applied to Mrs. Callahan for a loan of $5,000 and that she agreed to make the loan to be secured by a mortgage upon the land. Being ignorant of such matters she employed one Michael J. Moore, an attorney at law, and relied upon him to attend to the business. As the building was in process of construction the agreement was made for a temporary mortgage, the money to be paid to Logan as the building progressed, and for a new mortgage for three or five years to be given by him to Mrs. Callahan to take the place of the temporary mortgage when the building should be finished. In accordance with this arrangement the temporary mortgage and note for $5,000, dated April 17, 1901, were executed by Logan, and Mrs. Callahan turned over to Moore certain bank books by means of which Moore from time to time drew out and paid over to Logan the money as the building progressed. Moore delivered to Mrs. Callahan the mortgage note, but kept the mortgage, which she frequently asked him to deliver to her, he putting her off by various excuses.

In January, 1902, Moore drew up the permanent mortgage dated January 9, 1902, and caused it to be executed and acknowledged by Logan. This was done without the knowledge of Mrs. Callahan, and the new mortgage and note were kept by Moore in his possession without recording the mortgage.

In May, 1902, Moore, without the knowledge or consent of Mrs. Callahan, negotiated a sale of the new mortgage to the defendants Kaufman and Bilosky for the sum of $4,500. Thereupon he drew a discharge of the mortgage of April 17, 1901, and the assignment to the trust company, held by it when the bill was filed, and on May 7, 1902, took the discharge and the assignment to Mrs. Callahan at her home and obtained her signature to them. He gave her no explanation of the contents and she was ignorant of the purport or purposes of the transaction. She also indorsed in blank the second mortgage note, and affixed her signature to an assignment dated May 7, 1902, of a fire insurance policy on the mortgaged house, but in ignorance of Moore's purpose to sell the mortgage. As a justice of the peace

Moore also took Mrs. Callahan's acknowledgment of the discharge and of the assignment at her residence, but did not fill in the acknowledgment. Bilosky and Kaufman, who had agreed that they would buy the mortgage for $4,500, did not have that sum. They had applied to the defendant trust company for a loan and the company had agreed to lend them $4,000 upon their own note with the Logan mortgage of January 9, 1902, as collateral. One Perry as conveyancer for the trust company had examined the mortgaged property and the title. He raised a question as to the taking by Moore of Mrs. Callahan's acknowledgments of the discharge and assignment. Thereupon in the afternoon of May 7, 1902, with the knowledge of Perry, one Morris, an attorney, was sent by Moore to take the acknowledgments of Mrs. Callahan to the discharge and assignment at her residence. She then observed in the assignment the words " Mercantile Trust Company " and asked " What have I to do with the Mercantile Trust Company? " Morris replied, " I don't know a thing about it. I supposed you knew what they meant when you signed them." She then replied that Mr. Moore was her lawyer, and he would not ask her to do anything wrong, and she thereupon acknowledged both the discharge and the assignment. The transaction was completed on or about May 7, 1902, Moore delivering to the trust company the mortgage note of $5,000 dated January 9, 1902, and indorsed in blank by Mrs. Callahan, the mortgage of that date which was put upon record May 7, 1902, the discharge dated May 5, 1902, of the mortgage of April 17, 1901, the assignment dated May 5, 1902, of the mortgage of January 9, 1902, and the fire insurance policy with the assignment thereon from Mrs. Callahan. At the same time Kaufman and Bilosky gave to the trust company their note for $4,000 and each of them paid to Moore $250 in money, and the trust company gave to Bilosky its check for $4,000 and he turned the check over to Moore, so that Moore received $4,500 for the mortgage and note of January 9, 1902. No inquiry was made by the trust company or its conveyancer or by Kaufman or Bilosky as to Mrs. Callahan's knowledge of the transaction or as to Moore's authority to sell the note and mortgage. About a month after this transaction Mrs. Callahan saw Moore and inquired of him what she had to do with the

Mercantile Trust Company, and he replied that he had put the papers in there so that they would be handy to get at when Mrs. Haggerty came in to buy the house, he having previously talked with Mrs. Callahan about a Mrs. Haggerty purchasing the mortgaged estate.

Moore appropriated to his own use the $4,500 and absconded in September, 1902. Until that time he was in good standing as an attorney.

Until December, 1902, Mrs. Callahan was ignorant of the receipt of the $4,500 by Moore. She never received any part of the money, and did not know of the delivery of the papers to the trust company until December, 1902, and was not informed of the transaction before that time, except as appears in the facts already stated.

Logan, the mortgagor, paid interest upon the mortgage note on July 9, 1902, and on January 9, 1903, to the trust company.

The bill prayed that the trust company and Kaufman and Bilosky might be enjoined from transferring the note and mortgage of January 9, 1902, to any one other than Mrs. Callahan ; that Logan might be enjoined from paying any part of the interest or principal to any one other than her; that the trust company and Kaufman and Bilosky might be required to account for and to pay over to her any interest or principal paid to them by Logan, and that they might be ordered to execute the instruments and indorsements necessary to vest in her a clear title to the note and mortgage of January 9, 1902.

The cross bill prayed that Mrs. Callahan might be enjoined from transferring the note of April 17, 1901, and be directed to deliver it up for cancellation.

*W. A. Munroe,* (*A. M. Chandler* with him,) for the plaintiff.

*G. Cunningham,* (*R. F. Herrick* with him,) for the Mercantile Trust Company.

*J. J. McCarthy,* for Logan.

*F. J. Maloney,* for Bilosky and Kaufman, submitted a brief.

HAMMOND, J. Upon the facts found by the master this is a hard case for the plaintiff. She entrusted to her legal adviser the savings of a lifetime and he shamefully abused the trust. And yet we can see no principle of law upon which she can be relieved as against any of these defendants.

There is nothing to justify a suspicion that any of them acted except with entire honesty and in the exercise of absolute good faith. Moore, her attorney, was the only person guilty of fraud. She saw fit to trust him implicitly, and to execute and acknowledge such instruments as he asked for, and it was solely by reason of these acts of her own that Moore was enabled to sell and deliver with her own genuine signature and acknowledgment the note and mortgage, and appropriate the proceeds to his own use. There was no forgery of her name, nor was she induced to sign or acknowledge any instrument by any false representation at the time on the part either of Moore or of any other person. She simply trusted him, signed what he put before her, and allowed him to have in his own possession all the documents which enabled him to deliver to the trust company the note and mortgage of January 9, 1902, with everything necessary to give the company an apparently perfect title to the same as a first mortgage. Before the delivery of any of the documents to any of the defendants she noticed the name of the trust company in the assignment and inquired of Mr. Morris, an attorney at law, who was there to take her acknowledgment, what she had to do with the trust company, and when he replied to her that he did not know but supposed she knew what the papers meant when she signed them, she replied that Mr. Moore was her lawyer and would not ask her to do anything wrong, and thereupon she acknowledged the discharge of the old mortgage and the assignment of the new one each to be her free act and deed. Moore at that time was an attorney at law in good standing, and this made it reasonably prudent for the plaintiff to entrust him with her money and business.

The same fact, with the added circumstances that she had placed in his hands the mortgage note indorsed in blank by herself and all the documents necessary to transfer to the trust company an apparently perfect title to the note and mortgage as a first mortgage, including acknowledgments made by her, made it reasonably prudent for the trust company and the other defendants to deal with Moore on the footing that he had authority to assign the note and mortgage and to receive the purchase price. We see nothing in the circumstances to put either of the defend-

ants upon further inquiry. If there was anything which under the circumstances could be characterized as negligence, it was upon the part of the plaintiff herself in executing papers without knowing their contents and purpose, and without asking for or receiving information as to them, and in going on with her acknowledgment of the discharge and the assignment after she herself had noticed that the assignment contained the name of a corporation with which, so far as she knew, she had nothing to do.

The case therefore is one in which she has entrusted voluntarily to an agent selected by herself documents, one of which was a negotiable note indorsed by herself in blank and so made transferable by delivery, of such a nature as to enable the person so entrusted with them to divest her of the apparent title to the note and mortgage in favor of the trust company, and for the benefit of Kaufman and Bilosky, no one of whom is shown to have been acting out of the ordinary course of business. The purchase and sale of mortgages is not at all an unusual transaction. The plaintiff shows no reason why there should be shifted from her to the defendants the loss occasioned by Moore's dishonesty, and made possible by her own active participation in the execution and direct acknowledgment of the papers.

The cross bill brought by Logan remains to be considered. Although this is called a cross bill, yet it does not seek any relief by way of defence to the original bill, but sets out a case which entitles Logan to affirmative relief, namely, to have delivered to him the first note which he gave to Mrs. Callahan. This relief he needs, even if the original bill be dismissed. In such a case the cross bill may be retained and a decree granting relief may be entered as if it were an original bill. *Holgate* v. *Eaton*, 116 U. S. 33. *Dawson* v. *Amey*, 13 Stew. 494. *Sigman* v. *Lundy*, 66 Miss. 522. *Worrell* v. *Wade*, 17 Iowa, 96. See other cases cited in Dan. Ch. (5th ed.) 1553, note 3, and cases cited in Story, Eq. Pl. § 399, note a.

The master has found that Logan applied to Mrs. Callahan for a loan of $5,000 upon real estate and that she, having agreed to make the loan, employed Moore as her attorney to look up the title, prepare and attend to the execution and recording of the

papers, and pay over the money to Logan.  As the building on the premises was in process of construction the agreement was made with her knowledge for a temporary mortgage upon which the money could be paid to Logan from time to time as the building progressed, and when it was completed a new mortgage for three or five years was to be executed by him to her to take the place of the temporary loan.  Under these and further facts found by the master we are of opinion that the delivery of the new mortgage by Logan to Moore was a delivery to the defendant in the cross bill, and that Logan upon such delivery was entitled to the return of the old note and the discharge of the old mortgage.  The order must be

*Bill dismissed ; in cross bill decree for the plaintiff Logan.*