STATE ex rel. BENNETT, Plaintiff, *v.* STATE BOARD OF
EXAMINERS et al., Defendants.

(No. 2,807.)

(Submitted November 13, 1909.    Decided November 22, 1909.)

[104 Pac. 1055.]

*Revenues — State  Purposes — Taxation — Rate—Constitution—
Self-executing Provisions—Legislature—Powers.*

Revenues—State Purposes—Taxation—Legislative Powers.
  1.  For ordinary purposes the legislature may not convene oftener than
  once in two years; therefore, since the making of provision for the
  support and maintenance of the state government is one of the ordinary
  functions of government, the power vested in the legislative assembly
  to levy a uniform rate of taxation upon all property in the state for
  that purpose must be exercised in regular session.

Constitution—Self-executing Provisions.
  2.  A constitutional provision is self-executing if it supplies a sufficient
  rule by which the right given may be enjoyed and protected, or the
  duty imposed enforced; and is not self-executing when it merely in-
  dicates principles without laying down rules by which they may be
  given the force of law.

Revenues—Taxation—Rate of Levy—Legislature—Powers—Constitution.
  3.  *Held,* that the provision of section 9, Article XII of the state Con-
  stitution, that when the taxable property in the state shall amount to
  $300,000,000, the rate of taxation for state purposes shall never
  thereafter exceed one and one-half mills on each dollar of valua-
  ᵒtion, is not self-executing, in the sense that when the taxable
  property reaches the above amount, after the levy has been fixed by
  the legislature at two and one-half mills, the present lawful rate, the
  rate is *ipso facto* reduced to one and one-half mills; but such reduction
  becomes operative only upon legislative action had at regular session.

Original proceeding by the state, on the relation of Willard
Bennett, against the State Board of Examiners for an injunction.
Judgment for defendants.

In behalf of Plaintiff there was a brief by *Messrs. Gunn &
Rasch,* and oral argument by *Mr. M. S. Gunn.*

*Mr. Albert J. Galen,* Attorney General, and *Mr. F. M. Hall,* sub-
mitted a brief in behalf of Defendants; *Mr. Hall* argued the cause
orally.

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

Original application for an injunction. The complaint sets forth the following statement of facts as a foundation for the relief sought: That the defendant, the state board of examiners, consisting of the other persons joined as defendants, is vested under the state Constitution with the power to examine all claims against the state, except salaries or compensations of officers fixed by law, and to authorize the payment of such claims out of appropriations made by the legislature for this purpose; that the plaintiff is a resident of the state and the owner of real and personal property within the state, subject to the payment of taxes necessary to provide revenue to maintain the government of the state and its various institutions; that the eleventh legislative assembly, by the provisions of House Bill No. 315 (Chapter 88, page 118, Laws 1909), levied a tax of two and one-half mills for state purposes upon all property subject to taxation for the years 1909 and 1910; that the legislature also at the same session made appropriations of large sums in anticipation of the revenue to be realized from this levy for the years 1909 and 1910 at the rate so fixed; that the total value of property subject to taxation in the state, as ascertained by the assessment for the year 1908 and adopted by the legislature for the purpose of adjusting the rate of the levy for the years 1909 and 1910, was $248,774,792; that, according to the assessment for the year 1909, this amount increased to $280,401,064, and will be further increased upon assessment for the year 1910 to $300,000,000 or more; that section 12, Article XII, Constitution, provides that no appropriations shall be made nor any expenditures be authorized by the legislature, whereby the expenses of the state shall exceed the total amount of tax then provided for; that the appropriations for the year 1909 were based upon a levy of two and one-half mills for that year, and the appropriations for 1910 were based upon a levy at the same rate; that a levy of one and one-half mills upon a valuation of $300,000,000 or more will so materially

affect the revenues for that year that they will not be sufficient
to meet the appropriations for that year, and all appropriations
in excess of the amount that could be realized from a levy at
one and one-half mills for that year would be void; that the
allowance by the state board of examiners of expenditures for
the year 1909 for all the various purposes for which the vari-
ous appropriations were made for that year will so deplete
the public funds available for the support of the state govern-
ment that there will not be a sufficient amount, including the
revenue realized from a one and one-half mill levy for the year
1910, to pay the usual and necessary current expenses of the
government during the fiscal year of 1910, and to complete
public buildings and other improvements begun under appro-
priations from the revenue of 1909; that many of the ap-
propriations were made from the revenues for the year 1909
for the construction of public buildings and other improvements,
which must be completed from the revenues of 1910; that on
November 8, 1909, the attorney general of the state officially
advised the defendant board that the levy of two and one-half
mills made by the legislature in 1909 must continue in force
until the next regular meeting of the legislature in 1911, even
though the assessed valuation of the property in the state shall
have increased to the amount of $300,000,000 or more during
the year 1910, and that the defendant board has authority to
permit expenditures out of the appropriations made upon the
basis of a two and one-half mill levy, without regard to the as-
sessed valuation of property for that year; and that the de-
fendant board under the advice so given threaten to disregard,
and will disregard, the fact that the taxable property in the
state will during the year 1910 reach a value of $300,000,000
or more, and, unless restrained from so doing, will proceed to
allow claims and permit expenditures largely in excess of the
revenues that may be realized from the lawful levy of one and
one-half mills for the year 1910, in violation of sections 9 and
12, Article XII, Constitution, to the serious detriment of the
public business of the state, and to the injury of the plaintiff

and all other taxpayers of the state. The prayer is for an injunction to restrain the board and its members from so permitting expenditures to be made that they will exceed the sum that may be legally collected for the maintenance of the state government under the provisions of the Constitution referred to.

Upon the filing of the complaint the attorney general, appearing for the defendants, interposed a general demurrer. The application has been submitted upon the questions of law thus raised. The question presented for decision is the following: If the increase in the value of the taxable property in the state should show a total valuation of $300,000,000 or more for the year 1910, may the taxes for that year nevertheless be lawfully collected at the rate of two and one-half mills, as fixed by the Act of the legislative assembly in 1909, and may the board of examiners proceed to audit claims and authorize expenditures upon that basis, notwithstanding such increase?

For ordinary purposes, the legislature may not convene oftener than once in two years. It can be convened by the governor at other times for extraordinary purposes. (Const., sec. 6, Art. V, sec. 11, Art. VII.) It is vested with the power, and is required, to provide the necessary revenue for the support and maintenance of government, and for this purpose to levy a uniform rate of taxation upon all property in the state, except such as is exempted by express provision of the Constitution itself. (Const., sec. 1, Art. XII.) Its power in this behalf is to be exercised in regular session and not at other times, because provision for its support and maintenance is one of the ordinary functions of government. That this power should so be exercised is clear from the fact that the legislative body must convene only at stated times, except when called in session by the governor to meet unforeseen emergencies. The limitations upon its power to fix the rate of taxation for state purposes and to make appropriations to meet the public necessities are found in sections 9 and 12, Article XII. Section 9 declares: "The rate of taxation of real

and personal property for state purposes in any one year shall
never exceed three (3) mills on each dollar of valuation; and
whenever the taxable property in the state shall amount to one
hundred million dollars ($100,000,000), the rate shall not ex-
ceed two and one-half (2½) mills on each dollar of valuation;
and whenever the taxable property in the state shall amount
to three hundred million dollars ($300,000,000), the rate shall
never thereafter exceed one and one-half (1½) mills on each
dollar of valuation," etc.   Section 12 declares: "No appropria-
tion shall be made or any expenditures authorized by the legis-
lative assembly whereby the expenditures of the state during
any fiscal year shall exceed the total tax then provided for
by law, and applicable to such appropriation or expenditure,
unless the legislative assembly making such appropriation shall
provide for levying a sufficient tax, not exceeding the rate al-
lowed in section nine (9) of this Article, to pay such appro-
priations or expenditures within such fiscal year.   This provi-
sion shall not apply to appropriations or expenditures to sup-
press insurrection, defend the state, or assist in defending the
United States in time of war.   No appropriation of public
money shall be made for a longer term than two years."   The
limitation as to the rate of taxation laid down in the former
of these provisions is clear and explicit, to-wit, that, whenever
the taxable property in the state shall amount to $300,000,000,
the rate shall never thereafter exceed one and one-half mills on
each dollar of valuation.   Is this provision self-executing in the
sense that, when the valuation has reached the amount of
$300,000,000 during any year after the rate has been fixed by
the legislature, the rate is *ipso facto* reduced to one and one-half
mills; or must it be interpreted as a self-executing limitation
upon the power of the legislative body, only when it is in the ex-
ercise of its ordinary functions while in regular session, and after
it, as the lawful taxing body, has ascertained the valuation with
reference to which it must fix the rate?   To say that it is self-
executing in the first sense is to say that the rate fixed by the
legislature upon the valuation for the year 1908—the only basis

at hand—was a contingent rate, to be modified by the state board of equalization at its meeting in 1909 or 1910, if it shall have found that the valuation for either year had reached the amount of $300,000,000. This would have left the rate for both years contingent and determinable by the board of equalization upon a condition which the legislature could not reasonably have foreseen or anticipated. It would also have left the amount of revenue to be raised, and at the disposition of the state board of examiners, contingent and undetermined. "There cannot be any imposition of a tax without the rate or amount being fixed. An undetermined tax is no tax." (1 Cooley on Taxation, 3d ed., p. 557.) Furthermore, the legislature is the only body that can fix the rate of taxation within the limitations declared. The rates mentioned are merely the limits beyond which the legislature cannot go. To leave it to the board of equalization to say whether or not taxes shall be collected at this or that rate would be a delegation of legislative power to that board. The legislature cannot delegate its power to any person or body of persons whomsoever (*State* v. *Holland,* 37 Mont. 393, 96 Pac. 719) ; and hence, the fixing of the rate being a legislative function, the board of equalization could not lawfully be clothed with authority to determine the rate upon any contingency whatsoever. Furthermore, "a constitutional provision may be said to be self-executing if it supplies a sufficient rule by means of which the right given may be enjoyed and protected, or the duty imposed may be enforced; and it is not self-executing when it merely indicates principles, without laying down rules by means of which those principles may be given the force of law." (Cooley's Constitutional Limitations, 7th ed., p. 121.) Mr. Tucker in his article on Constitutional Law, in the eighth volume of Cyc., at page 753, says: "Where the provision supplies the rule for enforcement and fixes a penalty for violations, there can be no doubt as to its character. It is not only self-executing, but prohibitive, and renders void all statutes in conflict therewith. But a provision may be both prohibitive and mandatory, and not self-

executing.    The question in such cases is always one of intention, and to determine the intent the general rule is that courts will consider the language used, the objects to be accomplished by the provision, and the surrounding circumstances, and, to determine these questions from which the intention is to be gathered, the court will resort to extrinsic matters when this is necessary.''

Section 12, Article XII, *supra,* construed together with section 6, Article V, section 11, Article VII, and section 1, Article XII, necessarily requires the conclusion that provision must be made for revenue for the two years intervening between sessions of the legislature, and also that appropriations for the different needs of the government be made for the same time. Only an unusual and anomalous condition could justify the adoption of any other course.    The Act of the eleventh legislative assembly, *supra,* was valid when it became a law.    The conclusion that it has become void for any reason since its enactment would seem anomalous.

The limitation declared is that the rate shall not ''thereafter exceed,'' etc.    It is an absolute prohibition; but construing it in the light of the requirement fixing the sessions of the legislature at stated times (section 6, Article V), and the other requirements rendering it incumbent upon the legislature to make provision for necessary revenues to maintain the government during the intervening time, and to fix the amount of the appropriations so that they will come within the revenues so provided, it is clear that the limitation is addressed to the legislature itself, the taxing body, exclusively, and not any other body.    It therefore becomes operative upon its action, and then only when it is engaged in the discharge of its duties in this regard.    At its regular sessions it is compelled to act upon the facts at hand and conditions determinable from the circumstances as they exist.    It cannot be required to anticipate all the conditions which may possibly arise in the interim; nor may it, in undertaking to anticipate supposed contingencies, incorporate in its Acts such conditions and provisos as will render

it impossible for the disbursing officers to carry forward the business of the government, or require them, in order to do so, to exercise the judgment and discretion which appertains primarily and exclusively to its own department.

We are of the opinion that the application is without merit. Hence the demurrer is sustained, and judgment ordered for the defendants.

*Judgment for defendants.*

MR. JUSTICE SMITH and MR. JUSTICE HOLLOWAY concur.