STATE ex Rel. TIPTON, Plaintiff, *v.* ERICKSON et al., Defendants.

(No. 7,125.)

(Submitted February 14, 1933. Decided February 18, 1933.)

[19 Pac. (2d) 227.]

*Mr. T. B. Weir* and *Mr. Albert J. Galen,* for Plaintiff, submitted a brief; *Mr. Galen* argued the cause orally.

*Mr. Raymond T. Nagle,* Attorney General, and *Mr. Jeremiah J. Lynch,* Assistant Attorney General, for Defendants, submitted a brief and argued the cause orally.

## Opinion: PER CURIAM.

This is a taxpayer's suit to enjoin the state board of examiners and the members thereof from carrying into execution the provisions of House Bill No. 22, approved February 9, 1933 [Chap. 10, Laws 1933]. The complaint alleges that the Act is unconstitutional in various respects, but that nevertheless,

unless restrained, the board will proceed thereunder. The defendant board has demurred to the complaint upon the ground that the same does not state facts sufficient to entitle the plaintiff to the relief sought.

The Act empowers the state board of examiners to issue and sell bonds of the state of Montana in an amount sufficient to pay all outstanding general fund warrants, not exceeding the sum of $4,500,000. Section 2 thereof provides that the bonds shall bear interest at a rate not exceeding 4 per cent., payable semi-annually on the first days of January and July, respectively. Definite amounts of the principal sum mature on January 1 of each year, commencing with January 1, 1936, and ending January 1, 1953, on which dates definite amounts fall due. Bonds maturing after January 1, 1944, are redeemable at the option of the defendant board on any interest paying day thereafter.

Section 3 of the Act provides: ''That there shall be and there is hereby levied annually upon all property in the state of Montana subject to taxation, an *ad valorem* tax on each dollar of the assessed valuation of such property, sufficient in amount to pay the principal and interest on said bonds as the same become due and payable, which tax when collected shall be placed by the State Treasurer in a fund to be known as the 'Funding Bond Sinking and Interest Fund,' and used for the payment of the principal and interest on such bonds and for no other purpose, which tax shall be computed against the different classes of taxable property on the percentage value thereof for taxation purposes as such percentage may be provided by law. * * * '' This section provides further that the taxes collected during each fiscal year other than certain gasoline taxes, specifically enumerated in the bill (which are already impounded for the payment of other obligations), beginning with the first day of July, are required to be set aside and kept by the state treasurer in a special and separate fund for the ''payment of the principal and interest of such bonds as such principal and interest become due and payable during the next following fiscal year or within thirty days

after the end thereof.'' And if during the course of such fiscal year sufficient funds are received from the license taxes to pay the maturities of principal and interest during said fiscal year, and thirty days thereafter, the excess of licenses collected during the residue of the year is no longer to be impounded until the commencement of a new fiscal year.

The state board of equalization is required between the first and second Mondays of August of each year to calculate and determine the rate of tax levy required, if any, to produce the amount necessary to pay the interest due and the maturities of principal during the then current fiscal year and thirty days thereafter, in addition to the funds already impounded from license taxes collected during the preceding fiscal year, and to certify the same to the county clerks of the several counties, who shall compute the tax and enter the same on the assessment books, to be collected as other taxes for state purposes are collected and transmitted.

In the determination of the question of the constitutionality of any Act, a statute, if possible, will be construed so as to render it valid. (*Hale* v. *County Treasurer*, 82 Mont. 98, 105, 265 Pac. 6.) It is presumed to be constitutional, and all doubts will be resolved in favor of its validity if it is possible so to do. (*State ex rel. Toomey* v. *Board of Examiners*, 74 Mont. 1, 238 Pac. 316, 320.)

The invalidity of a statute must be shown beyond a reasonable doubt before this court will declare it to be unconstitutional. (*Herrin* v. *Erickson*, 90 Mont. 259, 2 Pac. (2d) 296.) And a statute will not be held unconstitutional unless its violation of the fundamental law is clear and palpable. (*Hill* v. *Rae*, 52 Mont. 378, 158 Pac. 826, Ann. Cas. 1917E, 210, L. R. A. 1917A, 495.)

The Constitution is, as frequently stated by this court, a limitation upon the powers of the legislature, which in the passage of any law is acting under inherent powers, restricted only by the provisions thereof. (*State* v. *State Board of Equalization*, 56 Mont. 413, 185 Pac. 708.)

From the allegations of the petition it appears that the Twenty-Second Legislative Assembly appropriated certain sums to defray the expenses of the state government for the fiscal year ending June 30, 1932, and also for the fiscal year ending June 30, 1933; that on June 30, 1931, there were outstanding registered and unpaid warrants against the general fund amounting to the sum of $3,489,084; that as the warrants were presented the revenues received during the fiscal years covered by said appropriations were applied in payment of general fund warrants in the order of their registration, and the sums appropriated for each of said fiscal years were slightly in excess of the actual receipts. It is asserted by the plaintiff that by reason of the outstanding overdrafts for which no appropriation was made by the 1931 Legislative Assembly, the registered warrants now outstanding are illegal and void under the provisions of section 12 of Article XII of the Constitution, providing that "no appropriation shall be made nor any expenditures authorized by the legislative assembly whereby the expenditures of the state during any fiscal year shall exceed the total tax then provided for by law, and applicable to such appropriation or expenditure, unless the legislative assembly making such appropriation shall provide for levying a sufficient tax. * * * "

It appears from the record that the appropriations made did not exceed in any substantial sum the revenues received; but the revenues received were not sufficient to pay the outstanding registered warrants on July 1, 1931, in addition to the appropriations made for the ensuing biennium.

The existing exigent reasons for the enactment of House Bill No. 22 may be briefly stated as follows: The menace of the warrants, which have been accumulating for a period of about ten years, has injuriously affected the financial standing and operations of the state. They have embarrassed the fiscal officers, in that income, otherwise available for current expenses, has been directed toward the discharge of a portion of the old warrants and toward the payment of interest on all outstanding warrants. For instance, it is important to note

that for the fiscal year ending June 30, 1932, the actual income equaled 99.4 per cent. of the legislative appropriations, and for the fiscal year ending June 30, 1933, the collected income to this date plus the estimated income for the rest of the year equals 97.9 per cent. of the appropriations for the period. These figures indicate about as near a balance between estimated income and appropriations as it would be humanly possible to forecast.

Thus it will be readily seen that if the outstanding warrant indebtedness can be funded (amortized) as in House Bill 22 provided, the greater part of the state income can be devoted to the discharge of current governmental expenses. The advantages of the plan are manifest.

Under the Constitution appropriations may be made estimated upon the receipts from revenues to be collected during the fiscal year for which the appropriation is made. State revenues are derived from property taxes and a large number of license taxes, and estimates, however honestly made, are bound to be mere approximations which may be somewhat greater than the amounts received in the treasury.

The meaning of the term "appropriation," together with the manner of making the same, was the subject of discussion in *State ex rel. Toomey* v. *Board of Examiners,* supra, wherein the court said: "The word 'appropriation' is defined by Webster as 'the act of setting apart or assigning to a particular use or person: * * * the application to a special use or purpose * * * as of money to carry out some public object,' which definition has received the sanction of this court. (*State ex rel. Rotwitt* v. *Hickman,* 9 Mont. 370, 23 Pac. 740, 8 L. R. A. 403.) This setting apart or designation of the purpose for which public money may be used must be 'made by law.' This provision, however, does not require the introduction in the legislature of an appropriation bill, but the act may be accomplished in any manner receiving the sanction of the law. [Cases cited.]"

The outstanding warrants having once received the sanction of law, no further legislative approval was necessary or

required to continue their validity, in the absence of a showing of the withdrawal of legislative consent to their issuance, if that could be done.

The contention of plaintiff proceeds upon the misconception that an appropriation is a setting apart of general funds for a specific purpose instead of the sanction of the law to the expenditure of a definite amount of such funds in the treasury, or which it is contemplated will be collected under existing revenue laws.

The amount of taxes to be collected as a result of the levy and assessment for any given biennium may be ascertained with reasonable certainty, but the percentage of delinquencies in *ad valorem* taxes and the falling off in license taxes within the ensuing two years depend upon factors which cannot always be foreseen with even a reasonable degree of accuracy; and while appropriations may be made in absolute good faith and apparent good judgment, well within the reasonably anticipated receipts of the state, unforeseen contingencies may cause the actual receipts to fall far short of those reasonably anticipated, and thus, unavoidably, require the registration of warrants in substantial amounts issued in payment for the necessary and proper expenses of the state government. Such a situation does not justify a declaration that the warrants so issued and registered are invalid, or that the appropriations, on the authority of which the indebtedness represented by warrants was incurred, are unconstitutional.

The question then is presented as to whether on the facts here presented, showing that the accumulation of such excess expenditures over the actual receipts throughout a period of years has reached a point where the outstanding warrant indebtedness of the state exceeds the anticipated revenues for the next biennium, appropriations for necessary and proper expenses of government during that period are unconstitutional because the payment, in the ordinary course, of the outstanding registered warrants would leave nothing in the treasury for the payment of current expenses.

In the *Toomey Case* this court reserved the question as to whether the passage and approval of the general appropriation bill of 1925 violated section 12, Article XII of the Constitution, as unnecessary of determination on the fact conditions presented; but that reservation was made because, as stated on page 14 of the opinion in 74 Mont., 238 Pac. 316, 322, the relator failed to allege in his petition that at the time the appropriation was made "other appropriations theretofore made exceeded the difference between the amount of this appropriation and the anticipated income of the state for the period named."

Here it appears from the petition on file that the total of all appropriations made by the last Legislative Assembly is well within the reasonably anticipated income of the state for the period covered; and it is asserted that these appropriations are unconstitutional only because of the existence, at the time they were made, of the overdraft of outstanding warrant indebtedness of the state. This contention is without merit, for the reason that it was never within the contemplation of the framers of our Constitution that any prohibition incorporated in that instrument should bring the state government to an impasse; and if the provision now under consideration should be interpreted to bring about a situation where the state government must cease to function, and where the lives, liberties, and property of the people must go unprotected, that provision must yield to the paramount purpose of the Constitution to create and perpetuate a state government for the protection of its people in their inalienable right to life, liberty, and the pursuit of happiness. (*State ex rel. Toomey* v. *Board of Examiners,* supra; *In re Application of State to Issue Bonds to Fund Indebtedness,* 33 Okl. 797, 127 Pac. 1065.)

We therefore hold that section 12, Article XII, has to do only with the relation of future expenditures to income so far, at least, as the appropriations are made under constitutional mandates and that the appropriations made and expenditures authorized, and which resulted in the registered war-

rants attacked, did not exceed the total tax then provided by law and applicable thereto, within the meaning of that section.

The record does not disclose that any prior assemblies had made appropriations in excess of revenues reasonably anticipated from existing sources of income. This court will indulge the presumption that the legislature acted in good faith in the making of appropriations in estimating the amount of anticipated revenue as a basis upon which appropriations were made, in the absence of a showing to the contrary. (*State ex rel. Boulware* v. *Porter*, 55 Mont. 471, 178 Pac. 832.)

We therefore hold these warrants, in so far as any fact is disclosed by the complaint in this cause, are valid obligations of the state of Montana.

It is asserted by the plaintiff that the Act violates section 1, Article XIII, of the state Constitution, in that it attempts to give or loan the credit of the state as a donation to the holders of the warrants which have been issued against the general fund and are now outstanding and unpaid. This contention presupposes that the warrants are illegal and invalid, and, having held that such is not the fact, the Constitution is not violated in this respect.

Plaintiff contends that House Bill 22 is in contravention of section 2, Article XIII, of the Constitution, because it creates a debt of the state in excess of $100,000 without having first submitted the question to the people of the state and obtaining their approval for the creation of such indebtedness. The complaint discloses that no authority to create a debt through the medium of an election has been obtained. The same question was before this court under identical facts in the *Toomey Case,* wherein this court held that the issuance and sale of treasury notes for the purpose of securing funds to pay outstanding general fund registered warrants was not the creation of a debt within the meaning of this constitutional provision, but was merely the issuance of a new evidence of an existing debt.

It is urged that the bill under consideration is violative of various provisions of the state Constitution, in that no levy is made therein by the legislature for a tax with which to pay the principal and interest, but that this function is delegated to the state board of equalization.

It is essential to the validity of a levy that it be made by the Legislative Assembly. The power to levy the tax rests in the Legislative Assembly alone, and cannot be delegated. If, however, the Act does create the levy and so provide that fixing the rate is a matter of mere arithmetical computation, the ministerial duty of fixing the rate may be imposed upon the state board of equalization. We hold that upon the language of section 3, heretofore quoted, under the plan contained in the bill, a levy is made to pay all of the interest falling due and the principal maturing each year. All the board is required or authorized to do, if sufficient funds are not on hand in the state treasury to pay the interest due and the bonds maturing during the current fiscal year and thirty days thereafter, is to ascertain the deficiency and compute the rate of *ad valorem* taxes to raise the amount of the deficiency in accordance with the levy made by the clear mandate of the bill, which levy, however, cannot exceed the constitutional limitation of two mills. (Sec. 9, Art. XII, Constitution.) The amount necessary for each year's payment of principal and interest is a matter of mathematical computation. The determination of the rate is likewise a matter of calculation. The formula for use by the state board of equalization in making these computations is found in the bill itself. No discretion is lodged in the board. Its duty is definitely declared. Its performance under the terms of the Act is wholly ministerial.

It may be true that a succeeding Legislative Assembly will be confronted with some embarrassment because it will be unable to ascertain definitely how much money it will have to appropriate in defraying the expense of state activities, because it will be unable to know at the time it makes the appropriation just how much of the two mills will be required to pay

the amount of interest falling due and the principal of the bonds; but that contingency does not raise the question of the constitutionality of the Act even though it may prove troublesome in some degree. The contingency must be solved when it arises. It will not do to apprehend that business conditions will grow worse instead of better, and therefore the problem will be insoluble; the presumption is to be indulged that the Legislative Assembly will surmount the difficulty in any event. After all, it involves simply the exercise of sound business judgment, which it is presumed the assembly will exert. In the last analysis it will only be necessary for the assembly to take into consideration the anticipated revenues based upon conditions then existing and reasonably in contemplation, in determining the amount to be appropriated for state purposes, bearing in mind that the bonds having been sold, the inviolability of the contract with the bondholders cannot be disturbed. To that extent the law authorizing the creation and sale of bonds will be irrepealable.

When bonds are issued and sold pursuant to the provisions of this Act, a contract is created between the purchasers and the state, and any attempt to repeal the levy therein made would be null and void under the provisions of section 10, Article I, of the Constitution of the United States. (*Gibbs* v. *Green*, 54 Miss. 592; *Bunch* v. *Wolerstein*, 62 Miss. 56; *Morton, Bliss & Co.* v. *Comptroller General*, 4 S. C. 430; *McCullough* v. *Virginia*, 172 U. S. 102, 19 Sup. Ct. Rep. 134, 43 L. Ed. 382; *Woodruff* v. *Trapnall*, 51 U. S. (10 How.) 191, 13 L. Ed. 383; *Von Hoffman* v. *Quincy*, 4 Wall. 535, 18 L. Ed. 403; 12 C. J. 999; 6 R. C. L. 333.) The appropriation resulting from the rate necessarily fixed to pay the bonds will take precedence over all other appropriations, except those commanded by the provisions of the Constitution itself. (See *State ex rel. Rotwitt* v. *Hickman*, supra; *State ex rel. Wade* v. *Kenney*, 10 Mont. 485, 26 Pac. 197.)

This court heretofore had under consideration an enactment wherein a tax of one-half mill was levied by the Act with which to pay certain bonds, which provided, however, that the

amount of levy might be diminished by the state board of examiners, provided revenues derived from sources under the terms of the Act other than taxation were sufficient in whole or in part to meet the maturities of the bonds, and it was there held that such a plan was not in violation of the particular constitutional provisions now under consideration. (*State ex rel. Lyman* v. *Stewart*, 58 Mont. 1, 190 Pac. 129.)

It is contended that under the decision of this court in *State ex rel. Bennett* v. *State Board of Examiners*, 40 Mont. 59, 104 Pac. 1055, 1057, language was used which condemns a plan such as is contained in House Bill 22. The only question before the court in that case was whether or not the provision of the Constitution declaring that when the valuation of taxable property in the state reached $300,000,000, the levy was to be reduced from two and one-half to one and one-half mills, was self-executing. The legislature at its regular session during the previous year had made a levy of two and one-half mills. The taxable valuation during the then current year had exceeded that sum, and it was sought by the action to have the board of examiners fix a rate in accordance with the constitutional provision. It was correctly held that the provisions of the Constitution were not self-executing, and that the board of examiners could not fix the rate in accordance with the Constitution, as under the facts there before the court the fixing of the rate would amount to the making of a levy.

It is true, as was said by this court in that case, that "there cannot be any imposition of a tax without the rate or amount being fixed. An undetermined tax is no tax." But the rate need not be prescribed by the statute; as we have said, if it is determinable by the mere act of computation, the ascertainment of it is ministerial or executive, and not legislative. (1 Cooley on Taxation, 3d ed., 557. Compare *Purington* v. *Broughton*, (Tex. Civ. App.) 158 S. W. 227; *State* v. *Bailey*, 56 Kan. 81, 42 Pac. 373; *Mustard* v. *Hoppess*, 69 Ind. 324; *City of Boise* v. *Union Bank & Trust Co.*, 7 Idaho, 342, 63 Pac. 107; *Link* v. *Karb*, 89 Ohio St. 326, 104 N. E. 632.)

In *Herrin* v. *Erickson,* supra, an Act was under consideration authorizing the issuance of bonds. The Act there held invalid was one creating a new indebtedness, which necessarily had to be submitted to the people. It provided an additional tax with no sinking fund; the maximum amount of bonds which might be issued, but the time when they were to be issued, when, in what amount, and the date of maturity were all discretionary with the board of examiners. Hence there was no levy. The amount under the law in that case which any taxpayer might be required to pay, was entirely discretionary with the board. The tax could not be determined by mere computation. Discretion and action thereon were necessary before any computation could be made. The facts in this case are clearly distinguishable, for the reason, as already pointed out, that there is no discretion lodged in the board. Its duty is plain, and, consequently, the Act itself contains a definite and certain levy of a tax with which the bonds and interest issued thereunder are to be paid.

After careful consideration, we find that House Bill 22 is not in contravention of any constitutional provisions urged by plaintiff, and is a valid and subsisting law.

The demurrer to the complaint is therefore sustained; and as it appears that the plaintiff cannot plead to further effect, a decree of dismissal must be entered.

We express our appreciation to counsel for the plaintiff and for the defendants for the thorough and able manner in which this matter has been presented. Their labors have lightened our own and facilitated us in reaching an early decision of this important case.

The proceeding is dismissed.

All the Justices concurring.